OCTOBER 26, 1803.

# Nicholas Meriwether *v.* Abraham Hite, &c.

*Upon an appeal from a decree of the General Court.*

How certain conflicting entries should be surveyed.

In this contest, Meriwether claims as assignee, under a settlement right obtained by James Knox, a settlement right obtained by Benjamin Logan and James Douglass, and the pre-emptions appendant on those settlement rights; the Hites claim under a settlement and pre-emption obtained by Hannah Soverain; and Meriwether being the complainant, it is proper first to investigate his claims, and to begin with Knox's certificate, on which all the other claims depend, or were intended to depend. The material parts of Knox's certificate are: "October 30, 1779—James Knox is entitled to 400 acres of land in the district of Kentucky, on account of marking out the said land, and raising a crop of corn in the country, in the year 1775, lying on the waters of Beargrass creek, to include a large spring joining the lands of Southall and Charlton, about 250 poles from the south-east corner of their land." It ought to be observed, that the *marking out*, which is mentioned in this certificate, can be of no other importance than to render particular the location it contains, and, in this point of view, it has been greatly relied on by Meriwether. The testimony respecting it is very voluminous, but is far from proving that when Knox obtained the certificate, or for several years thereafter, it was known by any person, besides himself and the surveyor, that he had marked out any land on Beargrass. The location, therefore, can not be aided by the marking out which is mentioned in the certificate, but must depend on the other calls it contains: "To include a large spring joining the lands of Southall and Charlton, about 250 poles from the south-east corner of their land." This clause will admit of two constructions: It may mean that the settlement was to join the lands of Southall and Charlton, about two hundred and fifty poles from the south-east corner, and include a large spring; and, if taken in this sense, leaves it uncertain whether the settlement was intended to join Southall's and Charl_

Meriwether *v.* Hite.

ton's land two hundred and fifty poles from their south-east corner, on their most southwardly line, or on their most eastwardly line; and this uncertainty could only have been removed by showing that there is a large spring more contiguous to one of those points than to the other, and within a reasonable distance therefrom. · Or the clause may mean: including a large spring which is about two hundred and fifty poles from Southall's and Charlton's south-east corner. And the probability is so nearly equal, which of these senses was meant by the locator, as to render the location too vague to be sustained; or, at most, can only make it proper that it should be taken in a way consistent with both. But the spring which Meriwether has fixed on, instead of being about two hundred and fifty poles from Southall's and Charlton's south-east corner, is about six hundred poles therefrom. It is, indeed, about two hundred and fifty poles from their south-west corner, and is proven to be a large spring, and remarkably deep; and, therefore, it is urged that it might have been known by other locators to be the spring intended; more especially as Southall's and Charlton's most south-eastwardly corner only points sixteen degrees nigher to south-east than their most south-westwardly corner, and no other spring is shown which as well or better fits the call. It is very doubtful whether this spring ought to have been found by other locators, and taken, when found, to be the one intended. But so it happens, as will presently appear, that it will not affect the interest of the Hites to admit that this settlement right should have been surveyed in a square, adjoining on Southall's and Charlton's most southwardly line, and including the spring, which is as much as Meriwether can reasonably expect.

The certificate for Logan's and Douglass' settlement right is thus: "November 18, 1779—Benjamin Logan and James Douglass, assignees, &c., are entitled to 400 acres of land, &c., lying on the waters of Beargrass, joining the upper corner of James Knox's land, &c." By Knox's land must be meant his settlement and pre-emption. But his pre-emption had not then been specially located. So that Logan's and Douglass' location was void for this uncertainty; or, conformably to the last opinion of this court in the case *Kenney* against *Whitlidge*, it could not become as particular as the law required it to be, until Knox's pre-emption was specially located, which has not been done; and, therefore, the situation of Logan's and Douglass' settlement right can never be ascertained.

It only remains to investigate the joint location made April 29, 1780, by Meriwether, of his two pre-emption warrants, each for one thousand acres—the one as assignee of Knox, and the other as assignee of Logan and Douglass. This location calls to begin at Charlton's and Southall's corner—an elm, ash, and two white oaks near the south fork of Beargrass—which could easily have been found at the time the location was made; thence with their line crossing Beargrass thirty poles—meaning their most westwardly line, because none other of their lines crossed Beargrass; thence up the south side, keeping thirty poles from the same. This has been construed by both the parties, and by the general court, to mean a meandering line, run parallel with the meanders of the water course, and thirty poles from it. It is, however, an absurd or imprudent call; because, in some cases, it might cost more than the value of the land exactly to comply with it, and in other cases it would be impracticable; yet, as far as possible, it ought to be complied with. But on this call another important question has arisen. Does the expression "crossing Beargrass" mean crossing the main fork of Beargrass, or crossing Beargrass below the junction of all its principal forks? The latter is improbable, because it is four or five miles from the beginning of this location of only two thousand acres of land. It is also still more improbable, for another reason: because then to run up the south side of the water course, thirty poles therefrom, as far as opposite to the beginning, would include much more land than the quantity located; and besides, the location was evidently intended to cover a considerable quantity of land to the south of Southall's and Charlton's most southwardly line. So that on this question the general court has properly decided that the call means crossing the main fork of Beargrass thirty poles. The other calls of this location may all be considered in conjunction: "Including Knox's old survey; thence parallel with Charlton's and Southall's line till it strikes a marked line; thence on the said line to Floyd's corner; thence on Charlton's and Southall's line to the beginning, including the settlement right of James Knox, and Benjamin Logan and James Douglass." Of the situation and extent of Knox's old survey, it is manifest that Meriwether himself had not an accurate knowledge when he made this location; nor is it proven that any other person then conversant on Beargrass had ever heard of it; and without a precise knowledge of Knox's old survey, the situations of the western line, and of the parallel line could not have been ascer-

tained from the two first of these calls. As to the marked line, other locators, by going to Southall's and Charlton's south-east corner, which, from this location, might have been known to be Floyd's corner, would have found a line of Hugh Allen's·survey running therefrom south thirty-seven degrees east, and they must have presumed that this was the marked line meant by Meriwether. And by Charlton's and Southall's line must have been intended their most southwardly line. It is, therefore, evident that Knox's old survey, his four-hundred-acre settlement right, and Logan and Douglass' four-hundred-acre settlement right, were meant to be included in this location, to the southward of Charlton's and Southall's most southwardly line. But from the location of Knox's settlement right, it appears that it was intended to be within the bounds of his old survey, and as there is nothing in the location from which the survey could have been presumed to contain more than four hundred acres, both of them together must have been considered by other locators as containing no more than that quantity; and it having before appeared that the situation of Logan's and Douglass' settlement right could not have been certainly known by other locators, they were only bound to leave sufficient scope for this, and for Knox's settlement right, when laid off in squares binding on Southall's and Charlton's south line. Therefore, thus far, and no farther, can the location under consideration have any effect. That is to say, the parallel line before mentioned should be run at the distance of two hundred and fifty-three poles from Southall's and Charlton's most southwardly line, which is the length of the side of a square of four hundred acres, and in this way Meriwether's location will not cover more land than the quantity it specifies. But as a part of the pre-emption belonging to the Hites will thus be included, a question would arise, whether it can be held by Meriwether as pre-emption land, or only as if it had been located by common treasury warrants, were it not that some of the springs called for in the certificate under which the Hites hold their settlement right are not satisfactorily identified. So that they can only be considered as having a title to this corner by their grant, which was obtained subsequent to the location on which Meriwether has surveyed it. It need not be observed, that this opinion will produce the same consequences to the Hites as the decree of the general court, although it may not be founded on the same principles.

Wherefore, it is decreed and ordered, that the said decree of the general court be affirmed, and that the appellant do pay unto the

appellees their costs in this behalf expended. And it is further decreed and ordered, that the cause be remanded to the said general court, that it may cause to be ascertained the metes, bounds, and quantity of the said interference, and enter up a decree therefor in favor of the said appellant, and make such further decrees and orders therein as law and equity may require, which is ordered to be certified to the said general court.